IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEDFIELD THOMAS,

   Plaintiff,

v.                                                              Civil Action No.: RDB-16-3700

PHH MORTGAGE SERVICES, et al.,

   Defendants.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

Plaintiff Stedfield Thomas ("plaintiff" or "Thomas") has filed this action[1] seeking a declaratory judgment and claiming breach of contract, asserting that he is entitled to property insurance proceeds jointly issued to him and defendant PHH Mortgage Services ("PHH"), plaintiff's former mortgage servicer, following a fire which destroyed the subject secured property, a residence located on West Franklin Street in Baltimore, Maryland. (ECF Nos. 2, 11.)

---

[1] Plaintiff's original Complaint was filed in the Circuit Court for Baltimore City, Maryland on September 23, 2016. (Notice of Removal, ECF No. 1 at ¶ 1.) Defendants timely removed the case to this Court on November 14, 2016 pursuant to 28 U.S.C. §§ 1332 and 1441, invoking this Court's diversity jurisdiction. Defendants subsequently moved to dismiss this case on November 28, 2016. (ECF No. 10.) Plaintiff then filed an Amended Complaint on January 3, 2017. (ECF No. 11.) The Amended Complaint seeks to cure plaintiff's asserted failure to name an indispensable party, Bank of New York Mellon Trust ("BNYM"), the mortgagee, as a defendant. *See* ECF No. 10.

  Defendants filed a Motion to Strike Plaintiff's Amended Complaint on January 24, 2017. (ECF No. 19.) Defendants argue that the Amended Complaint should be stricken because it was improperly filed outside the period in which plaintiff could amend the Complaint as of right and, moreover, without leave of Court. *See* Fed. R. Civ. P. 15.

  In light of the liberal standard for granting leave to amend pleadings, the pending Motion to Strike (ECF No. 19) is DENIED, and this Court will consider plaintiff's Amended Complaint in ruling on the pending Motion to Dismiss.

1

Now pending before this Court is defendants' Motion to Dismiss ("Defendants' Motion") (ECF No. 10).[2] The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, Defendants' Motion to Dismiss (ECF No. 10) is GRANTED, and this case is DISMISSED WITH PREJUDICE.

**BACKGROUND**

Plaintiff was the owner of a residential property located at 934 West Franklin Street in Baltimore, Maryland. (ECF No. 11 at ¶ 8.) Plaintiff acquired the property through a mortgage loan in the amount of $63,900.00 provided by defendant PHH. (*Id.*) The property was secured by a Deed of Trust dated May 19, 2005. (ECF No. 10-3.) Under the terms of the Deed of Trust, plaintiff agreed that the trustee would have the power to sell the property upon default. (*Id.* at ¶ 22.) The Deed of Trust also required plaintiff to insure the property against loss by fire and other hazards. (*Id.* at ¶ 5.) The mortgage loan was later transferred from PHH to defendant Bank of New York Mellon Trust ("BNYM"), with PHH remaining the servicer of the loan.[3] (ECF No. 10-4.)

After Thomas defaulted on the mortgage loan, BNYM appointed substitute trustees who initiated foreclosure proceedings in the Circuit Court for Baltimore City, Maryland on

---

[2] Defendants moved to dismiss pursuant to Rules 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure. (ECF No. 10.) As the Amended Complaint joins BNYM, which defendant asserts to be an indispensable party, as a defendant, defendant's argument in support of dismissal pursuant to Rule 12(b)(7) is MOOT.

[3] While plaintiff has named Wells Fargo Bank, N.A. as a defendant, the Amended Complaint makes no allegations related to this party. The only reference to Wells Fargo anywhere in the pleadings, it appears, is on the Form 1099 issued to Plaintiff. (ECF No. 2-5 at 2.) This reference is not sufficient to state a plausible claim for relief against Wells Fargo. Accordingly, all claims against it are DISMISSED WITH PREJUDICE.

January 16, 2014. (ECF No. 10-6.) While the foreclosure action was pending, the property was extensively damaged by fire on October 9, 2014. (ECF No. 11 at ¶ 10.) On December 1, 2014, Standard Guaranty Insurance Company sent Thomas a check in the amount of $20,591.84 to cover the damage to the property. (ECF No. 11 at ¶ 11.) Thomas endorsed the check and forwarded the funds to PHH. (*Id.* at ¶ 12.) Thomas also engaged an independent claims adjuster to revisit the insurer's award. (*Id.* at ¶ 13.) Following further investigation, plaintiff alleges that the adjuster persuaded the insurer to award $88,000.00 to cover the damages in full. (*Id.*)

The property was sold at a foreclosure sale on June 11, 2015. (ECF No. 11 at ¶ 18.) The property was purchased by the BNYM Trust for $45,000.00. (ECF No. 10-7.) On August 4, 2015, Standard Guaranty Insurance Company issued to Thomas and PHH an additional check in the amount of $44,508.16. (ECF No. 11 at ¶ 14; ECF No. 2-3 at 2.) The sale was ratified by the Circuit Court for Baltimore City on August 6, 2015. (ECF No. 11 at ¶ 18; ECF Nos. 10-6, 10-7.) Recognizing the mortgage to be in default, plaintiff alleges that he attempted to resolve his delinquency with PHH by tendering the insurance proceeds; PHH rejected Thomas' overtures. (ECF No. 11 at ¶¶ 16-17.)

Following the completion of the foreclosure proceedings, PHH notified Thomas that there was a deficiency of $43,648.26. (ECF No. 11 at ¶ 24.) PHH elected not to pursue the deficiency, however, and issued to plaintiff an IRS Form 1099-C reflecting the cancellation of the debt in January 2016. (*Id.* at ¶ 25.) During this time, plaintiff remained in possession of the insurance proceeds and requested that PHH endorse the check to plaintiff only. (*Id.* at ¶ 28.) These funds, initially issued to plaintiff and later reissued to PHH in August 2016,

3

are at the heart of plaintiff's claims in the instant suit. (*Id.* at ¶ 14.) Defendants have refused to release the insurance proceeds to plaintiff, as they maintain that any insurance proceeds were assigned to them under the Deed of Trust and, moreover, that their losses exceed the amount of the insurance proceeds.[4] (*Id.* at ¶ 29.)

Plaintiff originally filed his Complaint in the Circuit Court for Baltimore City, Maryland on September 23, 2016. (Notice of Removal, ECF No. 1 at ¶ 1.) Defendants timely removed the case to this Court on November 14, 2016 pursuant to 28 U.S.C. §§ 1332 and 1441, invoking this Court's diversity jurisdiction. Defendants subsequently moved to dismiss this case on November 28, 2016. (ECF No. 10.) Plaintiff then filed an Amended Complaint on January 3, 2017. (ECF No. 11.)

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). The sufficiency of a complaint is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

---

[4] Defendants note that BNYM sold the property to a third-party individual purchaser on May 4, 2016 for a sum of $5,000.00. (ECF No. 10-2 at 11.)

4

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017). While a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

Under limited exceptions, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). A court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . ." *Goines*, 822 F.3d at 166 (citations omitted); *see U.S. ex rel. Oberg*, 745 F.3d at 136 (quoting *Philips v. Pitt Cty Memorial Hosp.*, 572 F.3d 176, 180

(4th Cir. 2009)); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted). To be "integral," a document must be one "that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

## DISCUSSION

### I. Count I – Declaratory Judgment

In support of their Motion to Dismiss, defendants argue that plaintiff cannot plausibly assert his entitlement to the insurance proceeds because the terms of the Deed of Trust expressly attribute the insurance proceeds to BNYM as mortgagee, and, moreover, because BNYM's losses exceeded the amount of the insurance proceeds received. (ECF No. 10-2 at 16-17.)

In opposition, plaintiff relies on a decision of the Maryland Court of Special Appeals, also cited by defendants in their Motion to Dismiss, which provides, in pertinent part, that:

> [W]here the insured premises are damaged before foreclosure proceedings have been instituted or, if after they have been instituted, prior to the sale being held, and the mortgagee purchases the property at the foreclosure sale, the mortgagee is permitted to retain the insurance proceeds pursuant to a mortgage clause requiring insurance, to the extent of any deficiency between

6

the amount brought at foreclosure and the amount of the debt. The remainder of the proceeds is payable to the mortgagor.

*Rollins v. Bravos*, 80 Md. App. 617, 628, 565 A.2d 382, 387 (1989).

It is undisputed that this principle applies in the case now before this Court. *See* ECF No. 10-2 at 16; ECF No. 12 at 13. Indeed, Section 5 of the Deed of Trust provides for largely same result. (ECF No. 10-3 at ¶ 5.) However, in asserting his entitlement to the insurance proceeds, plaintiff overlooks the consequence of defendants' waiver of his deficiency. As the Court of Special Appeals explained in *Garland v. Hill*:

> [W]hen a mortgager purchases at a foreclosure sale the property upon which he holds the mortgage, for an amount less than the mortgage debt and costs, and the mortgagee thereafter waives any claim to a deficiency judgment, **the effect of the waiver is the same as if the bid had been for the full amount of the mortgage debt and costs**.

*Garland v. Hill*, 28 Md. App. 622, 630, 346 A.2d 711, 716 (1975), *aff'd,* 277 Md. 710, 357 A.2d 374 (1976). The effect of this rule in the instant case is that plaintiff is unable to allege his entitlement to any of the $44,508.16 in insurance proceeds now in dispute, as explained in detail below.

Based on BNYM's waiver of the deficiency, the rule announced in *Garland v. Hill* treats the foreclosure sale cost as $88,648.26, equal to the total amount claimed by BNYM (original loan plus accrued interest and foreclosure costs). (ECF No. 10-2 at 18, n. 11.) Thus, BNYM's total 'receipts' are the $20,591.84 in insurance proceeds (the first check) and $88,648.26 from the foreclosure sale; these amounts total $109,240.10.[5] On the other hand,

---

[5] The $5,000.00 received through the subsequent third-party sale, as plaintiff notes, is not relevant to the instant analysis. (ECF No. 12 at 14.)

7

BNYM's total 'losses' are the $88,648.26 'paid' at the foreclosure sale[6] and the $88,648.26 in debt claimed; these amounts total $177,296.52. Thus, BNYM's total deemed losses under *Garland* exceed its total deemed receipts by $68,056.42. These calculations are summarized in the following table:

|  | **BNYM Receipts** | **BNYM Losses** |
|---|---|---|
| Insurance Proceeds (First Check) | $ 20,591.84 |  |
| Deemed Sale Price | $ 88,648.26 | $ (88,648.26) |
| Debt Claimed |  | $ (88,648.26) |
| Total Receipts | $ 109,240.10 |  |
| Total Losses |  | $ (177,296.52) |
| **Balance (deficiency)** | **$ (68,056.42)** |  |

As the foregoing calculations indicate, BNYM's $68,056.42 in losses exceed the $44,508.16 in insurance proceeds now in dispute. Thus, BNYM is entitled to the entire $44,508.16 in insurance proceeds, leaving it with a total deemed loss of $23,548.26. These calculations are summarized in the following table:

|  | **BNYM Receipts** | **BNYM Losses** |
|---|---|---|
| Insurance Proceeds (First Check) | $ 20,591.84 |  |
| Insurance Proceeds (Second Check) | $ 44,508.16 |  |
| Deemed Sale Price | $ 88,648.26 | $ (88,648.26) |
| Debt Claimed |  | $ (88,648.26) |
| Total Receipts | $ 153,748.26 |  |
| Total Losses |  | $ (177,296.52) |
| **Balance (deficiency)** | **$ (23,548.26)** |  |

Accepting as true the well-pleaded factual allegations in plaintiff's Amended Complaint, there remains $22,900.00 in insurance proceeds still to be paid. (ECF No. 11 at

---

[6] As is its right, BNYM paid at the foreclosure sale using the indebtedness owed to it. *See Citibank Fed. Sav. Bank v. New Plan Realty Trust*, 131 Md. App. 44, 52, 748 A.2d 24, 28 (2000) ("It is well-settled in Maryland that a mortgagee may purchase the mortgaged property at a foreclosure sale by applying the mortgage debt to the purchase price, rather than by paying with cash or a certified check.").

¶¶ 11-14.) Were these funds to be distributed, BNYM's remaining $23,548.26 in losses exceed the $22,900.00 which are allegedly pending, leaving it with a total deemed loss of $648.26.[7] These calculations are summarized in the following table:

|  | BNYM Receipts | BNYM Losses |
|---|---|---|
| Insurance Proceeds (First Check) | $ 20,591.84 |  |
| Insurance Proceeds (Second Check) | $ 44,508.16 |  |
| Insurance Proceeds (Third Check) | $ 22,900.00 |  |
| Deemed Sale Price | $ 88,648.26 | $ (88,648.26) |
| Debt Claimed |  | $ (88,648.26) |
| Total Receipts | $176,648.26 |  |
| Total Losses |  | $ (177,296.52) |
| **Balance (deficiency)** | **$ (648.26)** |  |

Thus, even if the additional insurance funds alleged to be pending were distributed, BNYM would still be entitled to the total amount of such funds, and plaintiff is unable to demonstrate his entitlement to any part thereof.[8]

As plaintiff is unable to demonstrate his entitlement to any part of the insurance proceeds or in the allegedly forthcoming additional insurance proceeds, he fails to state a plausible claim for relief. Accordingly, Count I of plaintiff's Amended Complaint, seeking a declaratory judgment, must be DISMISSED WITH PREJUDICE.[9]

---

[7] While, for purposes of assessing plaintiff's pleadings, this Court must accept as true plaintiff's allegation that Standard Guaranty Insurance Company intends to distribute these additional funds, it bears mention that the memorandum accompanying the second insurance check states: "ACV APPRAISAL LESS DED AND PRIOR PMT." (ECF No. 2-3 at 2.) It appears that these abbreviations stand for the phrase, "[Actual Cash Value] Appraisal Less [Deductible] and Prior [Payment]," perhaps suggesting that all funds due from the insurer have been paid.

[8] While BNYM limits its claimed entitlement to any additional funds to $18,548.26 (presumably based on the $5,000.00 received in the subsequent third-party sale), the subsequent sale, as previously noted, is not relevant to the instant calculations, as it was BNYM's right as titleholder of the property following foreclosure to sell or otherwise convey the property as it deemed fit.

[9] Dismissal with prejudice is appropriate because plaintiff has filed both his original Complaint (ECF No. 2)

## II. Count II – Breach of Contract

Count II of plaintiff's Amended Complaint alleges that defendants breached the Deed of Trust contract by failing to apply the insurance proceeds to plaintiff's indebtedness. (ECF No. 11 at ¶¶ 47-48.) Thomas further alleges that defendants acted in bad faith by refusing to "negotiate a resolution of his indebtedness including…negotiat[ing] a refinancing of the mortgage loan." (ECF No. 11 at ¶¶ 49-50.)

With respect to the alleged breach of the express terms of the Deed of Trust requiring defendants to apply the insurance proceeds to plaintiff's indebtedness, defendants point to Section 5 of the Deed of Trust, which provides that:

> [I]f Lender acquires the Property under Section 22 or otherwise, **Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds** in an amount not to exceed the amounts unpaid under the Note or this Security Instrument. … **Lender may use the insurance proceeds** either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

(ECF No. 10-3, ¶ 5) (bold and underline added). Section 22 of the Deed of Trust pertains to the lender's right to accelerate payments on the loan and to initiate foreclosure proceedings. (*Id.* at ¶ 22.) Section 22 requires the lender to notify the borrower of his right to reinstate the loan following default.

In this case, defendants initiated foreclosure proceedings on the property on January 16, 2014. (ECF No. 10-6.) At the time of the foreclosure, plaintiff owed $49,240.92 on the loan. (ECF No. 11 at ¶ 16.) The fire which destroyed the property occurred on October 9, 2014. (*Id.* at ¶ 10.) The first insurance check, for $20,341.84, was issued on December 1, 2014. (*Id.* at ¶ 11.) Plaintiff does not allege that he could have reinstated the loan with the

and his Amended Complaint (ECF No. 11).

proceeds of the first insurance check. (*Id.* at ¶ 18.) The property was ultimately sold at a foreclosure sale on June 11, 2015. (*Id.*) Plaintiff does not allege that he could have reinstated the loan before the sale. Indeed, it was not until plaintiff received the second insurance check, for $44,508.16, on August 4, 2015, that he alleges he could have reinstated the loan. (*Id.* at ¶¶ 14-16.) As plaintiff does not allege that he could have reinstated the loan *before* the date of the foreclosure sale, he cannot plausibly allege that defendants breached the contract by declining to apply the partial payment tendered ($20,341.84 in insurance proceeds) to reinstate his debt of $49,240.92.

Moreover, Thomas fails to state a plausible claim that defendants acted in 'bad faith' by refusing to accept plaintiff's partial tender of payment or his requests to renegotiate the mortgage. "While it is true that a contract in Maryland gives rise to an implied duty of good faith and fair dealing, that duty concerns the 'performance and enforcement' of the contract itself." *Blondell v. Littlepage*, 413 Md. 96, 113, 991 A.2d 80, 90 (2010) (internal citations omitted). "[T]he covenant of good faith and fair dealing 'does not obligate a [party] to take affirmative actions that the [party] is clearly not required to take under [the contract].'" *Id.* (quoting *Parker v. Columbia Bank,* 91 Md. App. 346, 604 A.2d 521, 531 (1992)). In this case, plaintiff fails to allege any affirmative actions that defendants were required to take with respect to his defaulted mortgage. Rather, the Amended Complaint offers the conclusory allegation that defendants acted in bad faith by "pursuing a cause of action based on foreclosure to secure the insurance proceeds for their benefit." (ECF No. 11 at 50.) As defendants had the right to initiate foreclosure proceedings following plaintiff's default and also had the right under the contract to receive the insurance proceeds to mitigate the

diminution in value of the secured property, it cannot be said that defendants acted in bad faith by doing so. Accordingly, plaintiff fails to state a plausible claim for breach of contract, and Count II of the Amended Complaint must be DISMISSED WITH PREJUDICE.[10]

**CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss (ECF No. 10) is GRANTED, and this case is DISMISSED WITH PREJUDICE.

A separate Order follows.

Dated: May 23, 2017                  /s/
                                                       Richard D. Bennett
                                                       United States District Judge

---

[10] While the heading to Count II refers to a "Breach of Fiduciary Duty," plaintiff does not allege or identify any fiduciary relationship on the part of defendants. This mere label is unavailing and insufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.